UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | No. 3:25-MJ-16 |
| v. | : | |
| | : | (Magistrate Judge Caraballo) |
| VICTOR GARCIA TEUTLE, | : | |
| Defendant. | : | (Electronically filed) |

## GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

Victor Garcia Teutle was previously removed from the United States and now, having returned illegally, again faces removal. As a result, unless detained in this criminal proceeding, in which he is charged with the criminal offense of illegal reentry, his appearance is manifestly unlikely. Accordingly, because he presents a risk of flight and there are no conditions or combination of conditions that can reasonably assure the defendant's appearance as required, pretrial detention is warranted under the Bail Reform Act. *See* 18 U.S.C. § 3142(g).

## I.    INTRODUCTION

Defendant has been charged by criminal complaint with one count of illegal reentry, pursuant to 8 U.S.C. § 1326(a)(1). Based on the nature and circumstances of the charged offense, the weight of the evidence against the defendant, and the history and characteristics of the defendant, he is a serious flight risk. A threshold inquiry as to whether the government was entitled to a detention hearing was undertaken by the Court at the defendant's initial appearance and arraignment on April 9, 2025. At that time, the Court found that the government established by a

preponderance of the evidence that the defendant poses a serious risk of flight. In accordance with the Court's ruling, a detention hearing was scheduled.

The inquiry now turns to whether detention is warranted. Following a hearing, detention must be ordered if the Court finds that "there is no condition or combination of conditions [that] will reasonably assure the appearance of the [defendant] as required." 18 U.S.C. § 3142(e)(1). The government contends that no condition or combination of conditions will reasonably assure his appearance as required. Therefore, the government moves pursuant to 18 U.S.C. § 3142(e) for the pretrial detention of the defendant.

## II.    STANDARD OF REVIEW

Under the Bail Reform Act, 18 U.S.C. § 3141 *et seq.,* a defendant must be released on bail on the least restrictive condition or combination of conditions that will reasonably assure his appearance and the safety of the community. *See* 18 U.S.C. § 3142(c)(1)(B). However, federal courts are empowered to order a defendant's detention pending trial if a judicial officer concludes after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1). Evidentiary rules do not apply at detention hearings and the government is entitled to present evidence by way of proffer, among other means. *See* 18 U.S.C. § 3142(f)(2); *see also United States v. Delker*, 757 F.2d 1390 (3d Cir. 1985).

In the case before this Court, the government moves for pretrial detention pursuant to 18 U.S.C. § 3142(f)(2)(A). "Judicial officers making risk of flight

determinations are guided by the factors set forth in Section 3142(g), including the nature and circumstances of the offense charged, the weight of the evidence against the [defendant], and the history and characteristics of the defendant." *United States v. Himler*, 797 F.2d 156 (3d Cir. 1986).[1]  A finding of risk of flight must be proven by a preponderance of the evidence.  *Id.*

The government can show by a preponderance of the evidence that the defendant poses a risk of flight.  A review of the enumerated statutory factors supports this contention.

III.    <u>ARGUMENT</u>

A. <u>NATURE AND CIRCUMSTANCES OF OFFENSE CHARGED</u>

The defendant is a native and citizen of Mexico.  On June 5, 2010, he illegally entered the United States near Sasabe, Arizona without proper admittance or parole. At the time of his apprehension by members of the United States Border Patrol, the defendant was traveling in a van with eighteen other individuals, all of whom had illegally entered the United States from Mexico.  The defendant was offered a voluntary return to Mexico.  In accordance with that offer, on June 7, 2010, the

---

[1] Although § 3142(g)(4) permits the Court to consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release," in *Himler*, 797 F.2d at 160, the Third Circuit Court of Appeals found "it is reasonable to interpret the statute as authorizing detention only upon proof of a likelihood of flight, a threatened obstruction of justice or a danger of recidivism in one or more of the crimes actually specified by the bail statute."  *Id.*  As the crime of illegal reentry, in violation of 18 U.S.C. § 1326(a) is not an enumerated offense under 18 U.S.C. § 3142(f)(1), nor is there any claim that the defendant would intimidate a witness or a juror, as in *Himler*, "any danger which [the defendant] may present to the community may be considered only in setting conditions of release.  [The defendant] may be detained only if the record supports a finding that he presents a serious risk of flight."  *Id.*

defendant returned to Mexico voluntarily.

On September 14, 2014, agents with the United States Border Patrol encountered the defendant near Arivaca, Arizona. When spotted by agents, the defendant, along with two other individuals he was traveling with, attempted to "conceal themselves in a low spot under a mesquite tree." *See* Form I-831, p. 4. The agent noted that the defendant and his travel companions were wearing camouflaged clothing and had "carpet affixed to the bottom of their shoes, as to disguise their footprints." *Id.* Multiple burlap bundles, which were located and recovered from within proximity to the defendant and his companions, contained 167.35 pounds of marijuana with an estimated street value of $133,880.[2]

Following his apprehension, the defendant agreed to be interviewed by law enforcement and following an administration of his *Miranda* rights, he provided a video-taped sworn statement. During the interview, the defendant admitted that he was born in Puebla, Mexico on July 28, 1990. He made no claim to United States citizenship, nor was there a derivation benefit. He confirmed he lacked any immigration documents that would permit him to be in or travel through the United States. Further, he admitted that he knew his reentry into the United States was illegal under the circumstances.

With respect to his illegal entry, the defendant stated that he arranged, with an unknown individual in Mexico, to be illegally smuggled into the United States in

---

[2] Although the case was referred for criminal prosecution under 21 U.S.C. § 841, per the defendant's criminal history information, it appears that prosecution was declined.

exchange for $5,000. His destination was New York. He admitted that he crossed the international border illegally by climbing over a barbed wire fence on September 10, 2014. He crossed at an undisclosed remote location along with eleven other individuals. He claimed he walked for five days before being apprehended by members of the United States Border Patrol. The defendant denied any knowledge of or participating in the smuggling of marijuana into the United States.

Following his apprehension, the defendant was processed and served with Form I-860, Notice and Order of Expedited Removal. On September 17, 2014, the defendant was removed from the United States to Mexico from Del Rio, Texas. At the time of his removal, Form I-296, Notice to Alien Ordered Removed/Departure Verification, was executed, which contained his photograph, signature, fingerprint, and the signatures of the immigration officials who witnessed his departure. Additionally, he was presented with Form I-296, which unequivocally warned him of the criminal penalties under 8 U.S.C. § 1326.

Despite these warnings, at some point after September 17, 2014, the defendant returned to the United States. Department of Homeland Security databases contain no records of permission for him to reenter being granted by the Secretary of the Department of Homeland Security, or other documents which would otherwise give him legal status to reside in the United States after his deportation.

On or about February 20, 2024, Immigration and Customs Enforcement ("ICE") encountered the defendant in Pike County, Pennsylvania. On April 7, 2025, a criminal complaint was filed charging the defendant with one count of illegal

reentry, in violation of 8 U.S.C. § 1326.  An administrative ICE detainer was lodged the same day.  The defendant is currently housed in the custody of the United States Marshal Service and has an administrative ICE detainer lodged against him.

The nature and circumstances of the underlying offense involve the defendant's repeated disregard for the laws of the United States.  *See United States Pereira,* 574 F.2d 103, 104 (2nd Cir. 1978) ("The uncontested facts before us establish that [the defendant] has displayed a continuing and flagrant disregard for the Immigration Laws of the United States.  He has persisted in reentering the United States…[u]nder these circumstances, we do not hesitate to affirm [the defendant's] conviction."); *see also United States v. Morales-Sanchez*, 752 F. Appx. 814, 816 (11th Cir. 2018) (finding above-Guideline sentence for illegal reentry was proper in light of defendant's "pattern of criminal conduct and disregard for U.S. immigration law," among other factors).  Despite being apprehended on two occasions for illegally entering the United States and informed of the inherent criminality of his conduct, he flagrantly ignored the laws of the United States by illegally reentering the United States for a third time.  Additionally, the underlying offense highlights the defendant's ability to travel on very little means as well as the efforts he is willing to take to evade detection from law enforcement (*i.e.* camouflaged clothing and carpeted shoes).  Accordingly, the government submits that the nature and circumstances of the offense weigh in favor of detention.

### B.  WEIGHT OF THE EVIDENCE

Second, the evidence of the defendant's involvement in the alleged conduct is

overwhelming. Although the defendant is presumed innocent of the offense, the proffered evidence supports that the defendant was removed from the United States in 2010 and 2014 and did not subsequently obtain permission to lawfully return. Following his removal in 2014, he reentered the United States and was found in the Middle District of Pennsylvania. Where, as here, the evidence of guilt is strong, it provides "a considerable incentive to flee." *United States v. Millan*, 4 F.3d 1038, 1046 (2d Cir. 1993); *see also United States v. Palmer-Contreras*, 835 F.2d 15, 18 (1st Cir. 1987) (*per curiam*) (where "the evidence against defendants is strong, the incentive for relocation is increased"). Additionally, in the context of criminal immigration cases, as the First Circuit Court of Appeals noted, a defendant who is charged with illegal reentry has "a strong incentive to flee—to avoid the near certainty of a prison sentence followed by deportation." *United States v. Nieves*, 11 F. Appx. 6, 8 (1st Cir. 2001).

Thus, the government submits the weight of the evidence weighs in favor of detention.

### C. HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Arguably, the most compelling factor to warrant detention is the history and characteristics of the defendant. As a citizen and national of Mexico, the defendant lacks ties to the United States because he has no legal status in this country. *See United States v. Hernandez-Us*, 2025 WL 918695 (W.D. Pa. Mar. 26, 2025). Moreover, as a resident of Brooklyn, New York, he has no known connection to the Middle District of Pennsylvania. *See* 18 U.S.C. § 3142(g)(3)(A). Presently, there is

nothing in the record to suggest the defendant has a well-defined network of familial or community support within the United States. *Id.* To the contrary, at the initial appearance, defense counsel referenced a child who resides in Mexico. Thus, the defendant's closest familial ties remain in his country of origin. *Id.* Moreover, it appears the principal reason the defendant was in the United States was to earn money to send to his family in Mexico, which, until recently, "he accomplished without proper authorization, and ICE's involvement now frustrates that purpose by precluding any illegitimate sources of income." *Hernandez-Us*, 2025 WL at *9.

As to his criminal history, since illegally entering the United States for a third time, the defendant has been arrested on three occasions in two separate jurisdictions. *Id.* On February 20, 2024, the defendant was arrested for driving under the influence in Monroe County, Pennsylvania. When approached by law enforcement, the defendant, who was found "passed out at the wheel of a vehicle with an open bottle of beer next to him," "provided a Mexican passport for identification." *See* Monroe County Police Criminal Complaint. He informed officers that he was "staying at Airport Road in Smithfield Township." *Id.* Testing confirmed that the defendant's blood alcohol level was .182%, over twice the legal limit.[3] While that case was pending disposition, per the Pretrial Service Report, the defendant was arrested on April 18, 2024, in Monroe County, Pennsylvania for retail theft.[4]

---

[3] This case, docketed at MJ-43202-CR-0000127-2024 is scheduled for a preliminary hearing on June 3, 2025, in front of Monroe County Magisterial District Judge Michael A. Wolbert.
[4] The defendant pled guilty to retail theft, in violation of 18 Pa.C.S.A. § 3929(a)(1) on February 11, 2025.

With two criminal cases pending in Monroe County, the defendant was arrested yet again on May 1, 2024, for driving while intoxicated in New York. Although the government is unaware of any failure to appear history, the fact that the defendant allegedly engaged in successive criminal behavior while under pretrial supervision of a court speaks to his frivolous attitude towards rules and authority. Additionally, given the fact that the defendant was arrested and charged with driving under the influence twice within a six-week period, the government submits there is evidence of alcohol abuse; another factor the Court is permitted to consider when analyzing the issue of detention. *Id*.

In light of these considerations, the government submits that the history and characteristics of the defendant weigh heavily in favor of detention.

IV.    <u>CONCLUSION</u>

Based on an analysis of the § 3142(g) factors, the government submits that there are no conditions of release that will reasonably assure the appearance of the defendant as required given the risk of flight. On that basis, detention is warranted.

Moreover, the government would be remiss if it did not point out the fact that practically speaking, but for this criminal prosecution, the defendant faces mandatory removal from the United States to his native county. The issuance of Form I-871, Notice to Reinstate the Prior Order of Removal, will facilitate his removal by ICE without any further processing. Currently, the government is advised by ICE, individuals from Mexico with a final order of deportation can expect

to be deported within approximately one week after arriving in ICE custody. Significantly, ICE has no legal authority to detain an alien subject to an order of removal other than to facilitate deportation, except in limited circumstances not applicable here. *See* 8 U.S.C. § 1231(a)(1)(A) (stating that ICE "shall remove the alien from the United States within a period of 90 days").

Thus, if the defendant is ordered released on this federal criminal case under the Bail Reform Act, he will be transferred into ICE administrative custody, he will be deported by ICE, and therefore escape prosecution and punishment in this criminal case. It is thus undisputed that release of the defendant will not assure his appearance at trial; rather, it will guarantee his non-appearance. This provides the Court with another reason why detention is warranted because "no condition or combination of conditions *will reasonably assure the appearance of the [defendant] as required.*" 18 U.S.C. § 3142(e)(1) (emphasis added).[5]

---

[5] The government is aware of the Third Circuit's decision in *United States v. Soriano Nunez*, 928 F.3d 240, 245 n.4 (3d Cir. 2019). In that case, a footnote, which cites *United States v. Alion-Ailon*, 875 F.3d 1334 (10th Cir. 2017), states: "the presence of an ICE detainer and the *threat of potential removal alone* are not sufficient to deny [Bail Reform Act] pretrial release." (emphasis added). Here, the defendant faces virtually certain removal and not just the "threat of potential removal." Moreover, the presence of an ICE detainer is not the sole factor that warrants detention. To the contrary, the government has supplied the Court with a myriad of factors that support an order of detention. Not surprisingly, many other courts have agreed that pretrial detention in a criminal case is warranted for a person facing deportation. As one district judge observed, "Most courts considering the question have determined that the defendant's immigration status may be considered in the court's detention analysis." *United States v. Lozano*, 2009 WL 3052279, *2 (M.D. Ala. Sept. 21, 2009) (citing numerous cases). Another court, addressing a criminal defendant subject to removal, concluded: "This fact weighs heavily in favor of detention, and it alone nearly compels a finding that the United States has demonstrated by a preponderance of evidence that no release condition can assure Cobix-Espinosa's future appearance in this matter." *See United States*

For the foregoing reasons, the government submits that it is clear that no condition or combination of conditions will reasonably assure the presence of the defendant as required.  Accordingly, the government respectfully requests that the Court issue a pretrial order of detention.[6]

> Respectfully submitted,
> JOHN C. GURGANUS
> Acting United States Attorney
>
> /s/ Tatum R. Wilson
> TATUM R. WILSON
> Assistant United States Attorney

---

v. Lucas, No. 4:08CR3139, 2008 WL 5392121, at *3 (D. Neb. Dec. 19, 2008) ("An outstanding order of removal would be strong evidence of likely nonappearance."). See also United States v. Vasquez, No. 09-14(DSD/JJG), 2009 WL 150661, at *1 (D. Minn. Jan. 21, 2009) (detaining a defendant who was an aggravated felon subject to an outstanding deportation order upon its finding that defendant 'presents a risk of nonappearance because he is currently in the United States illegally, has been deported once before and is subject to a pending deportation order[]"). See also, e.g., United States v. Sanchez-Validivia, 2008 WL 5104688, *2 (D. Minn. 2008) (considering the fact that "in the event the Defendant remains on release, he will be arrested by ICE and there is a substantial likelihood that he will be immediately be removed to Mexico, pursuant to the warrant of deportation, with no ability by the United States to require him to stand trial and face the federal charges pending against him."

[6] The government reserves the right to supplement the record at the detention hearing should additional information be received.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | No. 3:25-MJ-16 |
| v. | : | |
| | : | (Magistrate Judge Caraballo) |
| VICTOR GARCIA TEUTLE, | : | |
| Defendant. | : | (Electronically filed) |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.  On April 14, 2025, she served a copy of the enclosed:

## GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

by electronic means upon Leslie Minora, Esq., counsel for defendant, Victor Garcia Teutle.

/s/ Christina M. Nihen
CHRISTINA M. NIHEN
Legal Administrative Specialist